## BOGK *v.* GASSERT.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

No. 179. Argued and submitted March 27, 1893. — Decided April 17, 1893.

Under the practice in Montana a defendant may move for a nonsuit upon the ground that the plaintiff has failed to prove a sufficient case for the jury; but, if he proceed to put in testimony, he waives this right.

When one party has been permitted to state his understanding of the contracts which form the subject of the litigation, there is no error in giving a like license to the other party.

An exception cannot be taken to "a theory announced throughout" an instruction of the court.

A general exception to a refusal of a series of instructions taken together and constituting a single request is improper, and will not be considered if any one of the propositions be unsound.

When a grantor makes an absolute deed of real estate, for a money consideration paid by the grantee to, the grantor, and the grantee at the same time executes and delivers to the grantor an agreement under seal, conditioned to reconvey the same on the payment of a certain sum at a time stated, and there is no preëxisting debt due from the grantor to the grantee, and no testimony is offered explanatory of the transaction, it is for the jury to determine whether the parties intended the transaction to be an absolute deed with an agreement to reconvey, or a mortgage.

*Teal* v. *Walker*, 111 U. S. 242, distinguished from this case.

*Wallace* v. *Johnstone*, 129 U. S. 58, held to decide that, in the absence of proof, in such case, "of a debt or of other explanatory testimony, the parties will be held to have intended exactly what they have said upon the face of the instruments."

THIS was an action at law instituted by Henry Gassert, Jacob Reding and James H. Steele, as plaintiffs, against Gustavus Bogk, as defendant, upon a lease of certain premises in the city of Butte, and also certain mining claims in Silver Bow County, wherein plaintiffs prayed judgment against defendant for the restitution of the premises, and for damages for the detention thereof at the rate of $500 per month.

The facts of the case were substantially as follows :

Gustavus Bogk, the defendant below, was the owner of a lot of ground in Butte City, Montana, upon which stood a public house known as the Virginia Chop House. He was also the owner of some mining claims, five in number, located in Summit Valley, Silver Bow County, Montana. Having become involved in debt and unable to hold the property, on May 19, 1885, he sold and conveyed by deed in fee, duly executed, an undivided half interest in the property to James H. Steele, one of the plaintiffs, for the sum of $7500 ; and, upon the same day, by another similar deed, he sold and conveyed the other half interest to Gassert and Reding, the other plaintiffs, for a like sum. These two amounts were paid to Bogk, and disbursed under his direction. By a separate and independent instrument in writing of the same day, the plaintiffs Gassert, Reding and Steele agreed to reconvey the property to Bogk, if, on or before the end of one year thereafter, he would pay to Steele the sum of $8967.50, and to Gassert and Reding a like sum. This sum of $17,935, in the aggregate, was the purchase price of the property, $15,000, with interest compounded thereon monthly for one year. The agreement of reconveyance recited the previous sale of the property, but made no mention whatever of any loan of money.

Two days afterwards, namely, on May 21, 1885, Bogk took a lease of the property from Gassert, Reding and Steele for the term of one year, at a nominal rent of $450, payable on or before December 1, 1885, with a privilege of working the mines for his own use and benefit. Bogk never offered to repurchase the property, or tendered to the plaintiffs the sum of $17,935, or any other sum.

Under this condition of things, the lease having expired, plaintiffs demanded possession of the property, and, upon the refusal of Bogk to comply with the demand, brought action before a justice of the peace, under a statute of Montana providing for summary proceedings against tenants holding over. Upon a plea of title interposed by Bogk, the suit was transferred to the district court of the proper judicial district, in accordance with the requirements of the statute, and was there tried before a jury. Plaintiffs proved the deeds of conveyance, the agreement to reconvey, the lease by them to Bogk, the rental value of the property, and then rested. Notice to quit and failure to surrender the premises had been averred in the complaint, and not being denied by the answer, under the provisions of the code of procedure in Montana, were taken as admitted. Thereupon counsel for defendant moved for a nonsuit upon the ground that the plaintiffs had not shown that they were ever entitled to the possession of the premises, or that the defendant had entered into possession under the lease, or that notice to quit or demand for the surrender of the premises had ever been given to defendant. The court overruled the motion for a nonsuit, and defendant excepted. The trial thereupon proceeded, and defendant introduced witnesses showing the value of the city property to be from $18,000 to $25,000, and the other property to be from $22,000 to $25,000, making in all, the lowest estimate at $40,000, and the highest at $50,000; that the negotiations commenced for a loan ; that the object was to raise money to pay off mortgages, judgments, liens, etc., upon the property; that plaintiffs never had possession of any of it ; that interest was computed upon the amount advanced ; that the lease was given to secure the representation of the mining property and pay the taxes, and that the transaction was intended as a mortgage.

Plaintiffs thereupon introduced certain evidence in rebuttal, and the jury returned a verdict for the plaintiffs, awarding them restitution of the property and $2175 as rent of the premises from May 21, 1886. Upon this verdict judgment was entered, the case appealed to the Supreme Court of the

Territory, and the judgment affirmed. Defendant thereupon appealed to this court.

*Mr. Edwin W. Toole* and *Mr. William Wallace, Jr.*, for plaintiff in error, submitted on their brief, in which they contended as follows concerning the overruling of the motion for a nonsuit, and touching the effect of the conveyances:

The section of the statute of the Territory of Montana under which the motion for a nonsuit was made, is identical with the present Compiled Statutes of the State, and reads as follows: "Sec. 242. An action may be dismissed or a judgment of nonsuit entered in the following cases: . . . Fifth, By the court upon motion of the defendant, when upon the trial, the plaintiff fails to prove a sufficient case for the jury." The exception to the ruling of the court was taken by bill of exceptions in this case, embodying the evidence. In *Kleinschmidt* v. *McAndrews*, the Supreme Court of Montana held that this was improper under the practice of the Territory and that the question could only be reviewed on a statement on appeal. That case was brought to this court on writ of error, and as a court of appeals for the Territories, it reversed this decision of the territorial Supreme Court, and held that the exception was properly preserved under the practice act of the Territory. *Kleinschmidt* v. *McAndrews*, 117 U. S. 282. So that, notwithstanding the ruling of the Supreme Court upon this question of practice, this court has overruled the same, and we shall assume that the question is properly presented by the bill of exceptions referred to in the record.

Did, then, the deed and defeasance, or agreement to convey, *per se* constitute a mortgage? If they did, the lease could amount to no more than a security, as a mortgagee is never entitled to the rents and profits until he acquires actual possession. *Teal* v. *Walker*, 111 U. S. 242. That is a well-considered case, in which this court reviews the authorities at length and reaches the conclusion that the deed and agreement to reconvey constitute a mortgage, and that until foreclosure and sale the mortgagee would not be entitled to possession or the rents, issues and profits of the mortgaged premises.

The court in its opinion cites with approbation: *Nugent* v. *Riley,* 1 Met. 117; *S. C.* 35 Am. Dec. 355; *Wilson* v. *Shoenberger,* 31 Penn. St. 295; *Dow* v. *Chamberlin,* 5 McLean, 281; *Bayley* v. *Bailey,* 5 Gray, 505; *Lane* v. *Shears,* 1 Wend. 433; *Freidley* v. *Hamilton,* 17 S. & R. 70; *Shaw* v. *Erskine,* 42 Maine, 371. If this court stands upon the principles announced by Chief Justice Shaw in *Nugent* v. *Riley* and the other cases cited in support of it, the court erred in not granting the motion for a nonsuit.

That a deed and agreement to reconvey for a certain sum at a specified time, constituting one transaction, are *per se* a mortgage, we cite: *Teal* v. *Walker, supra; Nugent* v. *Riley,* 1 Met. 117; *Wilson* v. *Shoenberger,* 31 Penn. St. 295; *Preschbaker* v. *Feaman,* 32 Illinois, 580; *Harbison* v. *Lemon,* 3 Blackford, (Ind.,) 51; *S. C.* 23 Am. Dec. 376; *Colwell* v. *Woods,* 3 Watts, 188; *S. C.* 27 Am. Dec. 345; *Edrington* v. *Harper,* 3 J. J. Marshall, 353; *S. C.* 20 Am. Dec. 145; *Dow* v. *Chamberlin,* 5 McLean, 281; *Bayley* v. *Bailey,* 5 Gray, 505; *Lane* v. *Shears,* 1 Wend. 433; *Freidley* v. *Hamilton,* 17 S. & R. 70; *Shaw* v. *Erskine,* 43 Maine, 371; *Jeffery* v. *Hursh,* 58 Michigan, 246; *Voss* v. *Eller,* 109 Indiana, 260; *Bunker* v. *Barron,* 79 Maine, 62; *Butman* v. *James,* 34 Minnesota, 547.

Since the decision of this court in *Teal* v. *Walker,* and subsequent to the transaction now under consideration, the question again came up, in which other elements entered into the transaction, and this court reached a somewhat different conclusion. *Wallace* v. *Johnstone,* 129 U. S. 58. But the deed before the court in *Wallace* v. *Johnstone,* containing covenants of warranty, was made to one person, while the agreement for an option was to a third person, thereby in no way suggesting a right to redeem by the vendor. We do not claim that this transaction would *per se* constitute a mortgage. It does not present the principles, or call for a determination of the doctrines announced by the various decisions and law writers, where the conveyance was to a certain person, who, as a part of the same transaction, agreed to reconvey to his grantor upon the payment of a certain sum at a certain time. The distinction is too apparent to require further comment.

If this court had intended to announce a different doctrine from that established by the authorities quoted with approbation in *Teal* v. *Walker*, it would in some way have referred to the fact. Nor do the decisions cited by the court which we have above quoted conflict with the case of *Teal* v. *Walker*, in so far as it is based upon the cases therein cited with approbation.

*Mr. W. W. Dixon*, (with whom was *Mr. Martin F. Morris* on the brief,) for defendants in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The action in this case was upon the lease of a city lot and certain mining claims, and a judgment was demanded for the restitution of the premises, and for damages for detention. The answer set forth in substance that the lease was one of a series of contemporaneous agreements, consisting of two deeds, an agreement to reconvey and a lease; that the deeds were intended as a mortgage; and that the rental of $450 named in the lease was the amount which it was understood would be necessary to pay the taxes upon the property, and the annual assessment work upon the mining claims, and that upon payment thereof by defendant Bogk the object of the lease should be fully satisfied and discharged; that the defendant paid this sum; and that the said lease became void and of no binding force.

The trial took place before a jury, and the assignment of error relates to the rulings of the court made in the course of such trial. We proceed to consider them in their order.

1. That the court erred in overruling defendant's motion for a nonsuit. In this connection, the bill of exceptions shows that the plaintiffs put in evidence the deeds from Bogk and wife to the plaintiffs, the agreement to reconvey, the lease with oral testimony of the rental value, and then rested. Defendant thereupon moved for a nonsuit upon the ground that plaintiffs had failed to prove that they were ever at any time in or entitled to the possession of the premises; that

defendant ever entered into possession under.or by virtue of said lease; and that plaintiffs totally failed to prove a demand to have been made for the possession of the premises, or ever served or gave notice to quit upon the defendant. This motion was overruled. Defendant excepted, and proceeded to intro-duce testimony in defence.

The practice in Montana (Comp. Stat. sec. 242) permits a judgment of nonsuit to be entered " by the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case for the jury." Without going into the question whether the motion was properly made in this case, it is sufficient to say that defendant waived it by putting in his testimony. A defendant has an undoubted right to stand upon his motion for a nonsuit, and have his writ of error if it be refused; but he has no right to insist upon his exception, after having subsequently put in his testimony and made his case upon the merits, since the court and jury have the right to consider the whole case as made by the testimony. It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link, and, if not, he may move to take the case from the jury upon the conclusion of the entire testimony. *Grand Trunk Railway* v. *Cummings*, 106 U. S. 700; *Accident Insurance Co.* v. *Crandal*, 120 U. S. 527; *Northern Pacific Railroad* v. *Mares*, 123 U. S. 710; *Union Insurance Co.* v. *Smith*, 124 U. S. 405, 425; *Bradley* v. *Poole*, 98 Mass. 169; *Columbia & Puget Sound Railroad* v. *Haw-thorne*, 144 U. S. 202.

2. The second error assigned is to the admission of the con-versation of the parties at the time of the execution of the instruments. Exception was duly taken upon the trial to the admission of this testimony. This exception does not seem to have been incorporated in either of the bills of exceptions, but in a " Statement on Appeal," which appears to have been set-tled and signed by the judge in the same manner as a bill of exceptions, and to have been treated as such by the Supreme Court of the Territory. The Code of Civil Procedure of Mon-tana provides (sec. 432) for a statement of the case to be used on appeal, which shall state specifically the particular errors

or grounds upon which the appellant intends to rely, and which seems to take the place of an ordinary bill of exceptions. Under this code, (sec. 628,) "when the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and, therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: First, where a mistake or imperfection of the writing is put in issue by the pleadings; second, where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 632, or to explain an extrinsic ambiguity, or establish illegality or fraud. The term, agreement, includes deed and wills, as well as contracts between the parties."

In this case Bogk had been called upon as a witness for himself, and testified that he had applied to these parties for a loan, not a sale; that he wanted money to pay off parties whom he owed; that he first spoke to Gassert or to Steele, but there was a dispute whether he should pay one per cent or one and a half per cent, "but it should have been made in a deed with a bond to me for a deed back again to me. I wanted it for a year, to pay off these parties and give them a mortgage for it; that was the first agreement." But the plaintiffs demanded a deed with an offer to give a bond for a deed back again, "so you can release it — pay it off at any time"; "Steele and Harry Gassert said this to me; said 'we want a deed, but will give you a bond to convey back at any time.' . . . At the time of the negotiation of this loan I promised to repay the $15,000 to the plaintiffs just as soon as I made a sale of my mines. I had these mines so that I thought I could make a sale of them, and calculated to pay it that way; I promised to pay it inside of a year. The interest was put all together for a year, but I agreed to pay this interest every month, but through my sickness and the bad luck I had, I could not succeed, and could not pay it. The agreement was this way: If I should pay the interest they should give me a -

written paper and credit for the amount, if it was paid in instalments as agreed between us. This lease, which was read in evidence, was made to secure the representation of two of my mining claims, the Eva and Leaf, which were then unpatented, and to secure the payment of the taxes on my property, which would probably be $250 and $200 for representing, making in all $450, which this lease was given to secure and nothing else; which representation work I did for that year, 1885, and I have paid the taxes. . . . There was nothing at all said in these interviews between me and plaintiffs or their agents or attorneys, as to the sale of my property. They said, give them a deed and they would give me a bond for a deed back again. The negotiation between us was to loan me money. There was no price set to any piece or pieces of this property. It was a loan on all the property together. They made me no proposition pending these negotiations to purchase my property, to buy it of me."

In rebuttal, Steele and Gassert were put upon the stand and asked as to the conversation which took place at the attorney's office at the time the deeds and contract to reconvey were made. This conversation was admitted, and defendant excepted. Now, while this might have been improper as original testimony, it would have been manifestly unfair to permit Bogk to give his version of the transaction gathered from conversation between the parties, and to deny the plaintiffs the privilege of giving their version of it. The defendant himself, having thrown the bars down, has evidently no right to object to the plaintiffs having taken advantage of the license thereby given to submit to the jury their understanding of the agreement. The code is merely in affirmance of the common law rule, and was evidently not intended to apply to a case of this kind.

3. Error is also imputed to the court "in adopting the theory announced throughout the instruction given on the part of the defendants" (in error) "that the transaction could not amount to a mortgage unless there was a personal liability on the part of the plaintiff," (in error, defendant below,) "upon which a recovery could be had, and error in giving conflicting

instructions upon said matter." This assignment is obviously too general. No exception was taken to any "theory" announced by the court; but if there were, it would not be valid, since the theory of the court must be expressed in particular language, and the exception should be taken to such language. Different persons may derive different theories from the same language, and in this very assignment error is charged in giving conflicting instructions upon the same matter.

4. Error is also assigned in not giving either of the instructions 2, 6 and 7, as requested by defendant. Upon the trial, the court was requested by the plaintiffs to give and did give seven instructions, to which defendant excepted; but as no error is assigned here upon such refusal, we are not at liberty to consider them. Defendant also requested twelve instructions, all of which were given, except the second, sixth and seventh, "to which action of the court," says the bill of exceptions, "the defendant then and there objected, for the reason that said instructions numbered two, six and seven correctly state the law as applicable to the facts in evidence, and are necessary in order that the jury may arrive at a correct conclusion; but, notwithstanding said objection, the court refused to give said instructions two, six and seven, to which action the defendant, by his counsel, excepted," etc.

This exception, as well as the one taken to the granting of the plaintiff's requests, is open to the objection so often made that a general exception taken to a refusal of a series of instructions taken together, and constituting a single request, is improper, and will not be considered if any one of the propositions be unsound. *Johnston* v. *Jones*, 1 Black, 209, 220; *Rogers* v. *The Marshal*, 1 Wall. 644; *Harvey* v. *Tyler*, 2 Wall. 328; *Beaver* v. *Taylor*, 93 U. S. 46; *Worthington* v. *Mason*, 101 U. S. 149; *Moulor* v. *American Life Insurance Co.*, 111 U. S. 335. This is not only the rule in this court but also in the courts of Montana. *Woods* v. *Berry*, 7 Montana, 195. Although since this case was decided, and at a session of the legislature in 1887, the law was changed so that the giving or refusal to give instructions are deemed excepted to, and no exception need be taken.

The *first* of these instructions, (No. 2,) stripped of its verbiage, assumes that an absolute deed and a separate written contract to reconvey, both under seal, bearing even date, executed and delivered at the same time, between the same parties, and relating to the same land, the agreement to reconvey being conditioned upon the payment by the grantor to the grantee of a certain sum of money within a certain period, constitute in law and fact a mortgage, and will not convey any interest in the premises, or entitle the grantee to the possession of the land described.

There is undoubtedly a great conflict of authority upon this point. The case of *Teal* v. *Walker*, 111 U. S. 242, is relied upon as sustaining this position. In that case one Goldsmith borrowed of Walker $100,000, and gave his note therefor. At this time Goldsmith was the owner of certain lands in Oregon, and he and Teal were the joint owners of certain other lands. These parties executed three several deeds of these lands, absolute on their face, but intended as a security for the note, as appeared by a defeasance in writing executed upon the same day as the note. This instrument, after reciting the execution of the note, declared the legal title of the lands conveyed to be in trust; that Teal and Goldsmith should retain possession of the lands until said note should become due and remain unpaid thirty days, and upon default being made in the payment of such note, they would surrender the lands to Hewitt, the trustee in the deed, who should take possession of them, and, upon thirty days' notice in writing, should sell the same at public auction. These instruments were construed to constitute a mortgage. In delivering the opinion of the court, Mr. Justice Woods said (p. 247): "The execution of all the deeds and the execution of the defeasance, which applied to all the deeds, occurred on the same day, and was clearly one transaction, the object of which was to secure the note for $100,000 made and delivered by Goldsmith to Walker." Here it will be observed that there was a debt, a note, a deed absolute on its face, and a defeasance conditioned upon the prompt payment of the debt.

The case of *Wallace* v. *Johnstone*, 129 U. S. 58, 61, 64, is

more nearly in point. The petition in this case alleged that defendant Wallace, by deed of warranty, conveyed certain lands to plaintiffs and one Leighton; that on the same day the grantees delivered to defendant Ford a contract in writing, giving him the option for sixty days of purchasing the land in question, upon payment of the sum of $5876, which contract on the same day was assigned to Wallace. Neither of the defendants ever paid anything on the lands, and neither exercised the option of repurchasing, and their rights had thus become forfeited. Defendant answered, admitting the deed and contract, but alleging that, taken together, they were understood by the parties as constituting a mortgage for the security of the money received by him at that time, which was in reality a loan; and that the transaction was to avoid the effect of the usury laws of Iowa. He, therefore, prayed for a right to redeem. In delivering the opinion of the court, Mr. Justice Lamar said: " If this question could be determined by an inspection of the written papers alone, the transaction was clearly not a mortgage, but an absolute sale and deed, accompanied by an independent contract between the vendee and a third person, not a party to the sale, to convey the lands to him upon his payment of a fixed sum within a certain time. Upon their face there are none of the *indicia* by which courts are led to construe such instruments to be intended as a mortgage or security for a loan; nothing from which there can be inferred the existence of a debt, or the relation of borrower and lender between the parties to the deeds or between the parties to the contract. . . . A deed of lands, absolute in form with general warranty of title, and an agreement by the vendee to reconvey the property to the vendor or a third person, upon his payment of a fixed sum within a specified time, do not of themselves constitute a mortgage; nor will they be held to operate as a mortgage, unless it is clearly shown, either by parol evidence or by the attendant circumstances, such as the condition and relation of the parties, or gross inadequacy of price, to have been intended by the parties as a security for a loan or an existing debt." The purport of this case is that, in the absence of proof of a debt

or of other explanatory testimony, the parties will be held to have intended exactly what they have said upon the face of the instruments.

In the case under consideration there is no mention made, in either of the three instruments, of a debt, a loan, a note, or anything from which the relation of borrower and lender can be inferred; and the case, in this particular, is distinguishable from that of *Teal* v. *Walker*, and is more nearly analogous to that of *Wallace* v. *Johnstone*. It is true that in *Wallace* v. *Johnstone* there was a deed with the usual covenants of warranty, and that the contract to reconvey was made with a third person; but as the contract was immediately assigned by such third person to the grantor in the deed, it is not perceived that the case is affected by either of these circumstances. The inadequacy of price was undoubtedly great, but this would not, of itself, authorize the court to take the question from the jury. In this connection it might be reasonably urged that defendant, having not only made an absolute deed of the premises, but having, two days thereafter, taken a lease of the same from his grantees, was thereby estopped to deny their title, but we do not find it necessary to express an opinion upon that point. The case was evidently a proper one to go to the jury, who were left to determine the question whether the instruments were intended as a mortgage, and were instructed that, if they found them to be such, the plaintiffs could not recover. The case seems to have been fairly tried, and the defendant has no just cause for complaint.

In the *second* of these instructions (No. 6) the defendant requested the court to charge, "That if the jury believes from the evidence that the defendant was induced to sign and execute the alleged lease in evidence herein by the deceit, misrepresentation, trick or fraud of the plaintiffs, or that the defendant executed the same by and under an innocent mistake or misapprehension as to the facts, then said lease is invalid and void, and you will find for the defendant." As there was no evidence in the case of deceit or misrepresentation or fraud, or even of the fact that the defendant executed the instruments under a mistake of fact, the request was prop-

erly refused.    All his evidence amounts to is that he wanted a loan of money, and that the plaintiffs insisted upon a deed and an agreement to reconvey, instead of a mortgage.    But defendant did not claim to have been imposed upon, deceived or defrauded, and he had no right to a request based upon this hypothesis.

The disposition we have made of these requests renders it unnecessary to consider the other, and the judgment of the court below is, therefore,

*Affirmed.*