# JULIO GRAU Y BATLE ET AL.

*v.*

# RAMON VALDECILLA ET AL.

### San Juan, Equity, No. 567.

1. Where complainants in a bill in equity which seeks to have a title held by another decreed to be in trust for complainants' benefit, with the right in them to pay a debt and redeem the same, are charged with the burden of showing the existence of the trust relation.

2. Where the proofs show that, instead of the title having been taken in trust by the respondents, it was in fact purchased for themselves, but a right given to complainants to repurchase within a specified time for a fixed sum, compliance with such conditions within the time is a condition precedent to complainants' right to the property.

3. Where a complainant fails to avail himself of the privilege to purchase property within a specified time for a fixed price, and instead takes a lease of the premises, stating that the title by which respondents hold the land is absolute, and negativing any idea of a trust or loan connected therewith, he is estopped from thereafter attempting to show that the transaction is a loan between the parties.

4. The doctrine that in Porto Rico a venta con pacto de retro is a conditional sale, and not a mortgage, reaffirmed, following **Rivera v.** Puente, 3 Porto Rico Fed. Rep. 293.

Opinion on the **merits, filed February 12, 1910.**

*Mr. C. M. Boerman,* attorney **for complainants.**

*Mr. N. B. K. Pettingill* and *Mr. J. M. Padilla,* attorneys for the respondents.

Grau y Batle v. Valdecilla.

RODEY, Judge delivered the following opinion:.

This is a bill in equity to have a deed that is absolute on its face between the parties declared to be a mortgage, with the right in one of the complainants to pay the principal and interest to date, and have the title to the land restored to him on the record, and for other relief.

After an application for a restraining order, and a later agreement between the parties that matters should remain *in statu quo* without it, an answer and a replication were filed. Thereafter, the court heard the cause and took all the proofs itself without the intervention of an examiner or master. Counsel then argued the case orally, and afterwards submitted memorandum briefs. Counsel for one of the parties caused some of the testimony to be transcribed for the benefit of the court, and the stenographer read the balance to us from his notes, so the matter is on for a decision on the merits.

The bill was filed in the San Juan division of the court in June, 1908. The proofs were taken in open court in the Ponce division about a year and a half thereafter, in January, 1910.

A statement of the case is about as follows: The controversy involves three contiguous pieces of upland or coffee land, forming together a tract of about 655 cuerdas, situated in the barrio of Jayuya Arriba, in the municipality of Utuado, on this island. The complainants are father and son, the latter having little or nothing to do with the matter. The father claims that the land was a portion of the estate of his father-in-law, and that the latter had assigned it to complainant's wife in payment of a debt he owed her, but had given her no deed for it. That, in about the month of April, 1902, one Obidio Bernal had obtained a

judgment in this court against the estate of his said father-in-
law, and had executed upon the property in question, and was
about to have it sold. That he, the complainant, then went to
the respondents, a firm of dry-goods merchants at Ponce, and
who were relatives of his; and got one of them to attend the
execution sale, and, as he claims, to lend him the money with
which to bid it in, with the promise that complainant should
have the privilege of returning the sum bid for the property,
with interest, within three years thereafter. That, in conse-
quence of this understanding, he remained in possession of the
property after the sale, but that, at the end of the three years,
he was unable to pay off the loan, and that, on this fact becoming
known to respondents, they made up the account and increased
it from $2,050, which was the price bid at the execution sale,
to $2,600, and gave him two additional years in which to pay
it, setting this new bargain forth in a lease which he took, or
was given him, in the name of his son, the other complainant,
and that, on his failure to pay at the end of this additional
period, they brought deshaucio proceedings against his son in
the local court, and got a judgment against him. It is fully in
evidence that respondents have been in possession of the place
since the date of this proceeding in 1908, and that they have
made considerable improvements in the same time, but, of
course, this should not affect the rights of the parties.

The respondents deny absolutely that the transaction was in
any sense a loan of money to the complainant, or that the deed is
anything but what it purports to be, or that it was ever intended
to be in the nature of a mortgage or security for a debt, but, on
the contrary, assert that the transaction was a direct purchase
for their own benefit, and that, after they bought the property,

Grau y Batle v. Valdecilla.

they took a deed for it in their own name, and changed the old local name of the plantation from "Yune," which it was, to "Santa Marina," after their birthplace in Spain (and the deed shows this change), and then verbally gave complainant the privilege of purchasing the place from them within three years for the amount ($2,050) which they had paid for it, he to pay a rental of $300 per annum, in the meantime, for the property, as well as all the taxes that should be levied against it, and further, to pay an account that was due them from complainant's father-in-law, amounting to something over a thousand dollars, —the whole sum to be paid in three equal annual instalments during said three-year period.

They further allege that this is the reason they left him in possession. The proofs showed that complainant did so remain in possession of the property, as he had been before the execution sale, and that he had some general dealings with the firm during three years, borrowing small sums of money from them and turning over the coffee that he got from the place to them; but it developed that he did not pay them enough in the whole three years to equal the rent and taxes, the firm having been obliged to pay the latter item themselves directly, charging it up to him on their books. At the end of the three-year period, it developed that a creditor of complainant attached a quantity of coffee on the trees on the plantation, and complainant went to the respondent firm about it, when they fixed the matter up for him and signed a note for the money, or guaranteed it in some way, complainant afterwards paying the amount to them in coffee from the plantation. Then, as stated, complainant took a lease from respondent in the name of his son for two additional years, in which it was stated that he should have the

### Grau y Batle v. Valdecilla.

privilege of purchasing the property within that time if he paid a rental of $300 per annum and all the taxes on the place in the meantime. The purchase price of the property as set out in the lease was something over $2,600, which it was claimed was the balance due on their previous verbal agreement for the sale of the property. The evidence is in conflict as to why this lease was made in the name of the son, or who suggested it. Each claims that the other suggested it for purposes of his or their own, but it is a fact that complainant produced a power of attorney from his son made months before, authorizing the father to act in such cases for him, so it would seem that it was not made for that particular occasion. However, at the end of this two years, complainant having paid little or nothing in the meantime, respondents notified him to vacate, and, on his refusal to completely leave the premises, brought the ejectment or deshaucio proceeding against his son, who was the legal holder of the lease, to force him to vacate the house, they claiming to have previously received possession of the rest of the property.

There is great conflict in the evidence. The original deed is absolute on its face to the respondents. They deny *in toto* any agreement of any kind or character with complainant, save as above stated. While he, on the other hand, contends that the whole transaction was a loan from the respondents, and that the deed, though absolute, was in truth and in fact a mortgage, and was intended as such, and that he, therefore, has a right to now redeem the same by paying it off with interest, etc., which he offers to do, although he does not tender any money into court.

Now, as we fully set forth in our opinion in Rivera v. Puente, 3 Porto Rico Fed. Rep. 293, if the transaction can be said to be a deed absolute, complainants have no cause of action, and if

Grau y Batle v. Valdecilla.

it can be considered to be a conditional sale, the deed being absolute with the right to repurchase in complainant for a specified amount, within a fixed period, and complainant did not avail himself of the privilege within the time, then, in like manner, he has no cause of action, and the only condition under which he can maintain this bill is in case the instrument shall be held to be a mortgage. We held in the case referred to that, unless the beneficiary under a venta con pacto de retro takes advantage of his privilege within the time limit, he has no cause of action.

In addition to having heard all the witnesses testify originally, and in addition to having seen them personally on the stand, we have just read and heard read all of the evidence in the case, and have examined the exhibits and entire record, so we have the matter and the proofs well in mind. It is undeniable that it was complainant who first went to the respondents and called their attention to the fact that the execution sale was about to take place, and he induced one of them to go up on the ground with him. There is a direct conflict between complainant and the member of respondent firm who attended the sale, as to who actually did the bidding, each claiming that he did it. However, the marshal made the deed to the respondent firm, and it is contended on the one side that the transaction should be considered as a loan, and on the other that it was a purchase absolute, with a verbal privilege to complainant to purchase the property within the time specified. It must be remembered that the property was sold on execution against the Perez heirs, and not against complainant. The latter never had any record title to it. On examining the return made on the execution by the marshal, we find that the execution itself contained peculiar conditions, in that it provided that the property

Grau y Batle v. Valdecilla.

could have been sold on the instalment plan, one third of the amount, or about $700 with interest, to be cash, and the balance in equal payments, to be made with interest in one and two years thereafter; so that in reality it was not necessary for complainant to secure a loan of about $2,000 at the date of the execution sale, because $700 would have been sufficient for his purpose. This lends some color to the contention of respondents that they bid the whole thing in as an investment, because they thought it a good bargain, as complainant had told them it produced over three hundred quintals of coffee the previous year, but that they gave their relative the privilege to buy the place from them within three years, as stated, for the consideration of the annual rental referred to, the payment of the taxes, and the payment of this old debt which they had against the former owner of this estate and for another debt against which the property was sold at the time in question. Even if complainant had bought the place from them, this would, as it can be seen, have made them a profit of something like 50 per cent on their investment of $2,050 in the three years.

We are aware that, in determining whether a deed absolute on its face was really intended as a mortgage, much stress is laid by courts and the law writers on the question as to whether a debt existed between the parties that has been extinguished by the transaction, and great weight is also given to the question of the adequacy of price, and courts lean to holding transactions as mortgages where the surrounding circumstances show that a person owing a debt was endeavoring to in some manner satisfy his creditor. Rivera v. Puente, supra. However, the evidence in this case does not show any great inadequacy of price, and our best judgment from the proofs is that the property at the time

Grau y Batle v. Valdecilla.

mentioned, which was less than three years after the great cyclone of 1899, was hardly worth double the amount it sold for on the execution. That it has since become more valuable should not affect the rights of the parties, because it is the intention of the parties as then formed which fixes the nature of the trans· action. 27 Cyc. Law & Proc. p. 1007, and cases cited.

So, apart from all this, we do think that, when the complainant, at the end of the three years, at a time when he was attached by one of his creditors, went to the respondents and entered into a solemn lease with them for the property in question, before a notary, wherein he set out over his own signature that the respondents were the owners of the property, and how they got it, and acknowledged the verbal privilege to him to purchase the place during the three-year period, and accepted an additional privilege of two more years within which to purchase it at a fixed price,—he has in a measure estopped himself from denying the truth of respondents' contentions here, and has given color to the truth of everything they say. Moreover, the lawyer who drew this lease, and who is apparently a very honest and conscientious witness, testified unequivocally that when the lease was made before him, both sides stated and conceded the facts to be as he, by their direction, set them forth in the instrument.

In the Rivera v. Puente Case, we stated: "As long ago as Chief Justice Marshall's time, it was held in Conway v. Alexander, 7 Cranch, 237, 3 L. ed. 328, that 'to deny the power of two individuals capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to

Grau y Batle v. Valdecilla.

transfer to the court of chancery, in a considerable degree, the guardianship of adults as well as of infants.' "

Of course, this is not quite that sort of a case. As stated, the respondents did not purchase this land from the complainant, although he was in possession of it at the time in conjunction with the succession of his father-in-law, but they purchased it at an execution sale against that estate, and hence this lends color to the claim that any bargain they had with complainant must have been a direct contract to sell him the land at a specified price within a specified time, which he did not avail himself of. Of course, we have fully in mind the rule, "once a mortgage, always a mortgage," but this should not be permitted to prevent the giving of proper weight to the solemn written deeds and leases of the parties. On behalf of respondents, we have the solemn deed absolute on its face, with the local name of the plantation changed as indicated, that was originally made to them. Next, we have a duly executed lease setting forth the truth of the deed and reciting the verbal agreement to sell the property to complainant, as contended for by respondents, and next, we have the confessed default of complainant to buy the place within the five years' time that he, in any event, had to do it in. There are three or four cases to be found in the reports of the Supreme Court of the United States, all of which are referred to, and commented upon, in Bogk v. Gassert, 149 U. S. 17, 37 L. ed. 631, 13 Sup. Ct. Rep. 738, wherein we think the rule is laid down that it requires pretty satisfactory evidence to overthrow two such unequivocal and solemnly executed instruments as appear in the case at bar.

On the whole, we do not think that the evidence here is even balanced evenly on the contentions of the respective parties, and

Grau y Batle v. Valdecilla.

so we are constrained to hold, and do hold, that the deed received by respondents for the property in question is just what it purports to be, and not a mortgage or an instrument intended to secure a loan, and that there never existed between these parties any other contract or agreement than one to permit complainant, Julio Grau y Batle, to purchase this property at a fixed price within a specified time, and, not having availed himself of that privilege, he has no cause of action here. The bill will therefore be dismissed with costs, and an order to that effect will be entered.