Barnet, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This suit arises out of a contract entered into by the plaintiffs as copartners for the construction of a power plant for the arsenal at Watertown, Mass.
*254 Pursuant to advertisement for bids, the plaintiff Stannard made a bid for the erection of said plant, which was accepted. Before submitting his proposal said Stannard had executed an undertaking, with the Illinois Surety Company as surety, that if within ten days after notice of acceptance of his bid he should fail to enter into contract with bond and surety for the construction of said plant the said surety company would pay to the United States the difference between the amount of said bid and the amount which the United States might contract to pay another party for the construction of said plant.
After the acceptance of the bid of said Stannard the defendants prepared a contract, dated September 26, 1912, together with a bond to secure performance thereof, both of which were put into his hands September 30, 1912. Stannard executed and returned the contract October 7, 1912, but did not furnish the required bond. The defendants did not then execute the contract. Upon Stannard’s promise to furnish the bond he was permitted to begin the proposed work, and he prosecuted it in a dilatory manner for several months, during which time he was often requested to furnish the bond, and which he promised to do. On February 13, 1913, the defendants by letter notified him that unless such bond was forthcoming by February 18 he would be ordered from the work and new bids would be advertised for. At that date about $6,000 worth of work had been done in the manner aforesaid by Stannard.
On February 17, 1913, the plaintiff Mackey, an agent for the Illinois Surety Company, made the proposition to Colonel Wheeler, defendants’ authorized officer, that if allowed to, he, Mackey, would enter into partnership with said Stannard for the performance of said contract, would sign Stannard’s original proposal and contract, and would furnish the required bond. This proposal was accepted by the Secretary of War, whereupon, on March 7, 1913, Mackey joined with Stannard in the execution of the original contract and furnished the required bond. This contract was approved by the Secretary of War March 15, 1913.
By the terms of the contract the work was to be completed March 26, 1913. It was completed October 21, 1913, *255 and the defendants deducted $2,561.36, as liquidated damages on account of this delay, as provided by the terms of the contract. In consequence of a decision of the Comptroller of the Treasury this sum was reduced to $2,413.96, for the recovery of which this suit was brought by the plaintiffs.
I. It is first contended by the plaintiffs that the contract in question became operative March 15, 1913, the date when it was approved by the Secretary of War, and hence was impossible of performance, the period for its performance expiring only eleven days thereafter. It probably must be conceded as true that under the circumstances surrounding the work to be done under this contract it was physically beyond the power of the plaintiffs to have performed it within eleven days, but whether that is a legal excuse for such nonperformance under the very peculiar circumstances of this case is at least questionable. Ricardi Co. v. Beaudit, 64 Ill. App., 261; Finney v. Bennett, 97 N. Y. S., 291; Jones v. Anderson, 82 Ala., 302.
But for the purposes of deciding this case that question is pretermitted, for the reason that it is believed that the concessions made to justify its consideration are not authorized by the facts of this case.
The plaintiff Mackey testified, over the objection of the defendants, that when he signed the contract in question he expected and believed he would be allowed a reasonable time to perform it, and a finding of such expectation and belief as a fact was asked by the plaintiffs. A citation of authorities is hardly necessary to the point that in the absence of fraud or mistake the language of the contract itself is the guide as to the intention of the parties to it. Walker v. Tucker, 70 Ill., 527. Of course, the circumstances surrounding its execution may be resorted to to explain an extrinsic ambiguity. Bogk v. Gassert, 149 U. S., 17.
In any event, the belief of Mackey upon this subject, contrary to the written terms of the contract, would avail nothing unless entertained also by the other party. Uttley v. Donaldson, 94 U. S. 29, 47.
We think it must be conceded that, when we take into consideration all the circumstances surrounding the sign *256 ing of the contract in question by the plaintiff Mackey, it was not at that time expected or believed by any of the parties thereto that it could or would be performed within the time prescribed by its terms. The question at issue in this case, however, goes further than that, and is, whether the parties did not by perfecting this partially executed and partially performed contract thereby give it life from its date and partial execution with all of its conditions and obligations, including the obligation to pay the liquidated damages provided in case of nonperformance within the time limit.
Let us briefly refer to the circumstances under which Mackey joined in this contract on March 7, 1913. The bid of Stannard for the performance of this work had been accepted and the Illinois Surety Company, by Mackey, its attorney in fact, had entered into an undertaking with the defendants that he would enter into a contract with the proper surety to fulfill the obligation of this bid, with the usual penalties in case of failure. Stannard had signed the contract but was unable to obtain the surety. The defendants had leniently allowed him to begin and proceed with the work in a dilatory manner with his repeated promise and doubtless effort to obtain such surety. After the expiration of several' months, during which Stannard had performed about $6,000 worth of work out of a total of $25,751, and the time limit being nearly expired, the defendants gave Stannard a few days longer in which to furnish the surety, otherwise to leave the work. If Stannard had been compelled to abandon the work the surety company of which Mackey was agent (and who had negotiated the first surety transaction) would have been liable on its bond. In this state of affairs Mackey signed the original contract and obtained the proper security for its performance. He might well have believed, and probably did, that the Illinois Surety Company which he represented could better afford to risk payment of the liquidated damages on account of the necessary delay in the performance of the contract than the prospective damages for which it was already liable on account of Stannard’s failure to conclude the contract in accordance with his bid. *257 Is there any reason for maintaining that the parties to the fully executed contract contemplated that any of its conditions were changed and that a reasonable time was allowed for its performance? If such had been in their minds, how easy it would have been to have so stated in a few words added to the partially executed contract.
It is our conclusion that the contract performed was the original contract partially executed October 7, 1912, and subsequently signed by the plaintiff Mackey and approved by the defendants, from which it follows that all of its conditions must be enforced, including the deduction for the agreed liquidated damages on account of the delay in its performance.
It follows from the foregoing that the petition must be dismissed, and it is so ordered.