**UNITED STATES of America, Appellee,**

v.

**Alberto ORTIZ–RENGIFO,
Defendant–Appellant.**

**No. 1242, Docket 87–1102.**

United States Court of Appeals,
Second Circuit.

Argued June 11, 1987.

Decided Oct. 29, 1987.

Richard A. Stanley, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Kerri L. Martin, Asst. U.S. Atty., New York City, on brief), for appellee.

Henriette D. Hoffman, New York City (The Legal Aid Soc., Federal Defender Services Unit, New York City, on brief), for defendant-appellant.

Before VAN GRAAFEILAND, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Alberto Ortiz–Rengifo ("Ortiz") appeals from a judgment of the United States District Court for the Southern District of New York, entered after a jury trial before Edward Weinfeld, *Judge*, convicting him of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (1982), and of one count of possession with intent to distribute one kilogram of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B) (1982) and 18 U.S.C. § 2 (1982). Judge Weinfeld sentenced Ortiz to concurrent terms of three years' imprisonment on each count and a three-year special parole on the substantive count, and imposed a fine of $1,000 on each count and a special assessment of $50 on each count. On appeal, Ortiz contends that the district court erroneously admitted evidence concerning his alleged coconspirator Carlos Pineros despite the absence of any evidence connecting Pineros to Ortiz. We conclude that even if no proper foundation was laid during the government's case, that flaw is not a basis for reversal because Ortiz testified and supplied the missing connection. We therefore affirm the judgment of conviction.

## I. BACKGROUND

The pertinent evidence at trial, taken in the light most favorable to the government, is summarized below.

### A. *The Government's Case*

On September 24, 1986, between 4:30 and 5:00 p.m., undercover Drug Enforcement Administration ("DEA") Special Agent Rene De La Cova and an informant drove to 71st Street and First Avenue in Manhattan to make a prearranged purchase of one kilogram of cocaine for $21,000 from an individual known to De La Cova only as "Carlos." At about 5:30 p.m., DEA Special Agent Louis Cardinali, stationed in a car on First Avenue near 71st Street, saw a beige station wagon with two occupants park on First Avenue, two cars behind his car. Thereafter, he saw Ortiz leave the vicinity of the beige station wagon, approach De La Cova's car, and begin talking with De La Cova.

Ortiz identified himself to De La Cova as "Carlos." De La Cova asked him if he had "the stuff." Ortiz, however, pointed at two agents across the street, and responded that the area was "too hot." He told De La Cova to meet him between 80th and 81st Street. De La Cova drove to the second location, where he waited in vain for Ortiz to appear. Meanwhile, other agents observed Ortiz walk to a telephone booth at 70th Street and Second Avenue. For some twenty minutes he repeatedly dialed, hung up, and appeared to be waiting for a return call. He then left the area by taxi, heading south on Second Avenue. Ortiz was arrested later that night in Queens. He had in his possession a telephone book in which he had written De La Cova's beeper number.

Meanwhile, an individual later identified as Carlos Pineros sat waiting in the parked beige station wagon or on its fender for approximately an hour. When Pineros was arrested at 6:45 p.m., he had in his possession a beeper that was not functioning properly because it needed batteries. On the front seat of the station wagon was a one-kilogram package of cocaine wrapped in a jacket. The government's theory was that Ortiz, not wanting to approach Pineros's car within sight of persons he believed to be law enforcement officials, had been trying, from the telephone booth, to reach Pineros's beeper number but had failed because the beeper's batteries were dead.

Ortiz objected to the introduction of any evidence concerning Pineros on the ground that Cardinali had been unable to identify the occupants of the station wagon when it parked on First Avenue and had not seen Ortiz emerge from that vehicle, and hence the government had failed to show any connection between Ortiz and Pineros or between Ortiz and the cocaine. The trial court ruled that the evidence would be admitted without prejudice to a motion to strike at the end of the government's case

if Pineros had not been sufficiently connected to Ortiz by that time.

At the close of the government's case, Ortiz moved, *inter alia*, to strike the evidence with regard to Pineros's arrest and the seizure of the cocaine, renewing his argument that there had been no evidence connecting either Pineros or the cocaine to Ortiz. The district court denied the motion, ruling that there was sufficient evidence under the standard set by *United States v. Geaney*, 417 F.2d 1116, 1120 (1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970), of a conspiracy and Ortiz's membership in it to allow the evidence concerning Pineros and the cocaine to be submitted to the jury:

> ... The court finds under United States against Geaney that there is suffi-cient evidence to submit to the jury for it to decide whether or not a conspiracy existed and, further, sufficient evidence for it to decide whether or not the defendant here on trial was a member of the conspiracy. Accordingly, all the evidence that was received tentatively with respect to the acts and conduct of the alleged co-conspirator will be submitted to the jury for its consideration to determine the factual issues, that is, one, the alleged conspiracy and, two, the defendant's alleged participation therein.

### B. *The Defense Case*

Ortiz testified in his own defense. He identified Pineros as his brother-in-law and stated that on the afternoon in question he had ridden with Pineros in Pineros's station wagon to First Avenue and 71st Street, planning only to meet his wife in Manhattan that evening. Ortiz testified that Pineros had planned to meet a man named Guillermo Pineda at First Avenue and 71st Street. He stated that Pineros parked on First Avenue near 71st Street and asked him to tell Pineda they would meet at 81st Street instead. Ortiz testified that after delivering Pineros's message to Pineda and another man, he went to a nearby telephone booth and tried unsuccessfully to call his wife.

Ortiz testified that he did not know there was cocaine in Pineros's car, and he denied that anyone had asked him about "stuff" and that he had said that the area was "too hot."

The jury found Ortiz guilty on both counts, and he was sentenced as indicated above. This appeal followed.

## II. DISCUSSION

On appeal, Ortiz contends that he is entitled to a new trial on the ground that it was error for the district court to admit the testimony and physical evidence regarding Pineros and the cocaine, because "[a]t the end of the Government's case, there was not one iota of evidence connecting appellant to Pineros." The government argues (1) that it produced sufficient evidence of a connection between Ortiz and the beige station wagon to make the evidence regarding Pineros admissible, and (2) that, in any event, Ortiz's conviction should not be reversed because his own testimony supplied whatever foundation was necessary to permit the evidence regarding Pineros to go to the jury. We agree with the government's second contention and hence need not resolve the close question raised by the first.

Preliminarily, we note that the court's use of the *Geaney* standard required a somewhat greater preliminary showing by the government than is traditionally required for the admission of evidence of the sort challenged here. If the Pineros evidence had consisted of *statements* that would be inadmissible hearsay unless they complied with the requirements of Fed.R. Evid. 801(d)(2)(E), the government would properly have been required to show, by a preponderance of the evidence, that there was a conspiracy of which both Ortiz and Pineros were members and that Pineros's statements had been made in furtherance of that conspiracy. *See United States v. Geaney*, 417 F.2d at 1120; *see also Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (modifying *Geaney* standard to permit court to use hearsay evidence in assessing admissibility). And if, in the present case, the government had adduced other evidence

showing that there was such a conspiracy and that Pineros's acts had been done in furtherance of the conspiracy, the Pineros evidence would of course have been admissible. *See, e.g., United States v. United States Gypsum Co.,* 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *United States v. Guillette,* 547 F.2d 743, 751 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). But the *Geaney* rule established the (pre–*Bourjaily*) standard only with respect to coconspirator statements, not coconspirator noncommunicative acts. *United States v. Geaney,* 417 F.2d at 1120 n. 3; *see Lutwak v. United States,* 344 U.S. 604, 618, 73 S.Ct. 481, 489, 97 L.Ed. 593 (1953).

■ The standard that the government is required to meet for the admission of noncommunicative acts is simply their relevance. *See id.; United States v. Geaney,* 417 F.2d at 1120 n. 3. Evidence is relevant if it has a tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. Fed.R.Evid. 401. Thus, if the government could have shown, for example, that Ortiz's fingerprints were on the package of cocaine found in Pineros's car, the cocaine and Pineros's acts would have been admissible without additional proof that a conspiracy existed.

■ If the trial judge is not satisfied that proffered evidence is relevant but believes that its relevance depends upon the proof of other facts, he may conditionally admit the evidence subject to proof of the connecting facts. Fed.R.Evid. 104(b). When the court has conditionally admitted evidence proffered by the government and no connecting facts are proven, the court may strike the evidence from the record at the close of the government's case or at the close of all the evidence.

■ If the trial court has allowed the conditionally admitted evidence to go to the jury, we will review the defendant's challenge to the relevance of that evidence in the context of the record as a whole. Thus, if the defendant presented evidence that demonstrated the relevance of the challenged evidence, we will not reverse the conviction on the ground that the needed foundation was not established during the government's case. We find explicit support for this approach in *United States v. Calderon,* 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954), in which the Supreme Court observed *obiter* that a "[defendant's] proof may lay the foundation for otherwise inadmissible evidence in the Government's initial presentation. . . ." *Id.* at 164 n. 1, 75 S.Ct. at 188 n. 1 (citations omitted).

We also find strong implicit support in the cases dealing with challenges to the sufficiency of the evidence. It is well established that a defendant's appellate challenge to the sufficiency of the evidence will be reviewed in light of the evidence as a whole, and even if it is the defendant who has supplied the only proof of an essential element of the charge against him, his sufficiency challenge will be rejected. Thus, in *Calderon,* the Supreme Court relied on the defendant's testimony, given after his motion for a judgment of acquittal had been denied, in finding that there was sufficient evidence to support his conviction. *Id.* ("By introducing evidence, the defendant waives his objections to the denial of his motion to acquit."). Citing *Calderon* in *McGautha v. California,* 402 U.S. 183, 215–16, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), the Court elaborated as follows:

> [A] defendant whose motion for acquittal at the close of the Government's case is denied must decide whether to stand on his motion or put on a defense, with the risk that in so doing he will bolster the Government case enough for it to support a verdict of guilty.

*Id.* at 215, 91 S.Ct. at 1471. *See United States v. Maniego,* 710 F.2d 24, 28 (2d Cir.1983) (" '[o]nce a defendant offers evidence after the denial of a motion for acquittal at the close of the Government's case in chief . . . the defendant waives any claim to the sufficiency of the Government's case considered alone' ") (quoting *United States v. Keuylian,* 602 F.2d 1033, 1040–41 (2d Cir.1979)); *United States v. Pui Kan Lam,* 483 F.2d 1202, 1208 n. 7 (2d Cir.1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974); *United*

*States v. Goldstein,* 168 F.2d 666, 669–70 (2d Cir.1948) (a defendant, having unsuccessfully moved for acquittal on grounds of insufficiency, who " 'by his own evidence, supplies the missing link,' " " 'has no right to insist upon his exception after having subsequently put in his testimony, and made his case upon the merits, since the court and jury have the right to consider the whole case as made by the testimony' ") (quoting *Bogk v. Gassert,* 149 U.S. 17, 23, 13 S.Ct. 738, 739 37 L.Ed. 631 (1893)). In light of the rule that we may look to the defendant's own evidence to determine so fundamental a matter as whether there was proof of all the elements of the crime charged, we think it follows *a fortiori* that we may look to the defendant's evidence to determine whether the government's evidence was relevant.

Ortiz argues against this result on the ground that it unfairly forces a defendant to testify in his own behalf:

[I]n the [sufficiency] context, a defendant has two opportunities to argue that the evidence is insufficient—once to the court and again in summation to the jury. If the defendant miscalculates and strengthens the prosecution's case, it is reasonable to require him to suffer the consequences. By contrast, the district court's erroneous admission of damaging evidence relating to the coconspirator was undoubtedly going to affect the jury adversely unless the defendant could rebut it. Admission of the evidence lets the jurors use it. The defendant cannot argue that the jury should not use it.

(Appellant's brief at 15.) This argument is meritless. The question of logical relevance, no less than the question of sufficiency, may be argued both to the court as a preliminary matter and to the jury as the ultimate decider. Plainly, the probative value of the challenged evidence would be an appropriate matter for argument to the jury. Indeed, it may be easier to persuade jurors that a given item of evidence has no logical connection to the defendant than to persuade them that evidence obviously having such a connection should not convince them of the defendant's guilt beyond a reasonable doubt.

 In the present case, Ortiz testified that he had traveled to the site of the aborted narcotics transaction with Pineros in the vehicle in which the cocaine was found. Assuming that the government's own evidence failed to establish a connection between Pineros and Ortiz, Ortiz's testimony unquestionably established the missing connection. In light of the record as a whole, therefore, we conclude that the government's evidence regarding Pineros was properly submitted to the jury.

## CONCLUSION

The judgment of conviction is affirmed.