**Andrew M. FREDRICK,
et al., Appellees,**

v.

**DISTRICT OF COLUMBIA, Appellant.**

**No. 99–7229.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 15, 2001.

Decided June 26, 2001.

Rehearing Denied Aug. 10, 2001.

Carl J. Schifferle, Assistant Corporation Counsel, argued the cause for appellant. With him on the briefs were Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel. Lutz Alexander Prager, Assistant Deputy

Corporation Counsel, entered an appearance.

Janet R. Cooper argued the cause and filed the brief for appellees.

Before: HENDERSON, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Andrew M. Fredrick, Stephen Bias and Michael J. Hairston sued the District of Columbia, alleging that the District had discriminated against black employees of the Metropolitan Police Department, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The first trial ended in a hung jury. After a second trial held in May 1999, the jury found the District liable for discrimination and awarded damages, $100,000 for Fredrick, $60,000 for Bias and $30,000 for Hairston. The District contends that it is entitled to a new trial because the district court erroneously admitted evidence and because the evidence introduced in the trial was insufficient to support the jury's verdict.

### I.

The contested evidence consisted of an excerpt of Monique Blasio's testimony from the first trial which the court admitted at the second trial because Blasio was unavailable. Blasio, a black member of the Metropolitan Police Department, testified as follows. While she was assigned to the Second District vice unit in 1992, she went to see Lieutenant Knieser—a white officer—to express interest in an assignment to the detectives unit. During this meeting, she suggested to Knieser that the dearth of female promotions to detective was "a gender issue." One day later she was reassigned to the tactical unit. Blasio

filed a grievance in 1993 or 1994 complaining of her reassignment. The "white officers" in the tactical unit considered her a "snitch." At one roll call, Blasio asked those members of the tactical unit who were gossiping about her to not do so behind her back. This prompted Officer Chagnon to throw something and to attempt to draw her into a fight. Blasio testified that Sergeant Vincent, the head of the tactical unit, sent her to see Lieutenant Knieser. At the same time, Sergeant Vincent permitted Officer Chagnon to report for duty as usual.

Blasio testified that Lieutenant Knieser took her statement, but made no audible response to her question: "How can you effectively do an investigation on me when you so [*sic*] biased?" Blasio said that "from that point on they just kept bringing me in for questioning, having me write all kinds of statements." She said she was later transferred to another police district.

The District contends that Blasio's testimony regarding the physical confrontation with Officer Chagnon was either irrelevant or unfairly prejudicial. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *see United States v. Crowder*, 141 F.3d 1202, 1206, 1209 (D.C.Cir.1998) (en banc). The argument in favor of relevancy is as follows. Fredrick, Hairston and Bias were assigned to the Second District. They alleged that they were denied opportunities to advance to the vice and detective units, partly because Lieutenant Knieser discriminated against them. In terms of Rule 401, the fact of consequence here was Lieutenant Knieser's hampering Fredrick's and his co-plaintiffs' employment prospects because of their race. Evidence that Knieser had

conducted his other duties, such as the investigation of a confrontation between a black and a white police officer, in a racially-biased fashion would make the existence of that fact more probable than without the evidence. *See Miller v. Poretsky,* 595 F.2d 780, 784–85 (D.C.Cir.1978); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Of course this assumes that Blasio's testimony is evidence of racial bias on the part of Knieser. The District maintains that Knieser's treatment of Blasio and Chagnon cannot support an inference that Knieser harbored racial bias. Other evidence showed that he treated both Blasio and Chagnon equally, recommending that both be disciplined for their roles in the incident. If the jury understood the evidence this way, the District has no cause to complain. We may overturn the evidentiary rulings of the district court only when "a substantial right of the party is affected," FED.R.EVID. 103(a), that is, only when the error affects the outcome of the trial. *See Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1512 (D.C.Cir.1995). Using that standard, we cannot see how the District can prevail. Other evidence bore on the question whether the District's employment practices were racially-biased. This evidence, to which the District did not object, included testimony regarding other incidents in which discipline was not meted out in an even-handed fashion. On the other hand, if the Blasio evidence did not tend to show racial discrimination, it could not have influenced the jury against the District. *See Williams v. Pharmacia, Inc.,* 137 F.3d 944, 951 (7th Cir.1998). To the extent the jury shared the District's view of the Blasio evidence, a racially-charged incident occurred and Knieser handled it in a racially-neutral manner.

■ Relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." FED. R. EVID. 403. The District claims Blasio's testimony about the Chagnon incident resulted in a "mini-trial of the entire roll call incident." It also claims that the evidence was prejudicial because it prompted the jury to find for Fredrick and his coplaintiffs out of sympathy for Officer Blasio or because the jury concluded that the police mismanaged the Second District.

■ Neither objection is persuasive. The trial court has broad discretion to weigh the extent of potential prejudice against the probative force of relevant evidence. *See United States v. Latney,* 108 F.3d 1446, 1450 (D.C.Cir.1997). Here the court carefully considered the District's objections and concluded that the District's fears of prejudice and confusion were unwarranted. The court disagreed with the idea that allowing the testimony would lead to a "mini-trial": that Knieser would testify to a different version of events would not "make [the trial] any longer than necessary." And because the roll call confrontation was a clear and distinct event, testimony about it was unlikely to cause the jury to confuse the District's responsibility for actions against Blasio with its liability for actions against Fredrick and his co-plaintiffs.

## II.

■ The District also seeks a new trial on the ground that the evidence was not sufficient to support the verdict with respect to any of the three plaintiffs. The plaintiffs counter that the District may not raise sufficiency of the evidence on appeal because, after it moved for judgment as a matter of law at the close of their case, the District never renewed the motion and it

filed no post-verdict motion to set aside the judgment.

A party may move for judgment as a matter of law "at any time before submission of the case to the jury." FED.R.CIV.P. 50(a)(2). When the District filed its motion after the plaintiffs' case-in-chief, the following exchange occurred:

THE COURT: All right. Let me hear your motion.

MR. BOLDEN [Counsel for the District]: Your honor, I'd like to move for a judgment as a matter of law as to the complaint.

It is the District's position that the plaintiff has the burden of making out a prima facie case of discrimination. We believe that case has not been made.

The court said it would take the motion under advisement, after which the District presented its evidence in defense. The court never expressly ruled on the District's motion.

■ It is common ground that under no circumstances may the District win more than a new trial. A party wishing to renew a motion for judgment as a matter of law after a verdict has been rendered must do so within ten days of the entry of judgment. *See* FED.R.CIV.P. 50(b). If "a party has failed to move for j.n.o.v., an appellate court may not, in reversing the denial of a directed verdict, enter judgment; relief is limited to ordering a new trial. *See Johnson v. New York, N.H. & H. R.R.*, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952)." *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 936 (D.C.Cir.1991); *see Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 218, 67 S.Ct. 752, 91 L.Ed. 849 (1947).

In the *Harbor Insurance* case just quoted, a company sought review of the district court's denial of its motion for a directed verdict. Like the District in this case, the company "did not make a timely motion for j.n.o.v. or a new trial [after judgment had been entered], but instead appealed directly to this court." *See Harbor Ins.*, 946 F.2d at 934.[1] We ordered a new trial on the single issue—contributory negligence—the company had raised in its motion for a directed verdict at the end of all evidence. *See id.* at 933.

The District is not in the same position as the party in *Harbor Insurance*. Its only motion came at the close of the plaintiffs' case; it never filed a motion for judgment at the close of all the evidence. The rule, followed in the other courts of appeals, is that "a party who moves for judgment after an opponent's opening statement or at the close of the opponent's evidence must ordinarily reassert the motion at the close of all evidence or risk waiving the right to renew the motion under Rule 50(b) ... and the right to appellate review of the sufficiency of an opponent's evidence ...." 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 50.20[3] (3d ed.2000); *see Davoll v. Webb*, 194 F.3d 1116, 1135–36 (10th Cir. 1999); *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir.1997); *Patel v. Penman*, 103 F.3d 868, 878 (9th Cir.1996); *BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of Am.*, 90 F.3d 1318, 1324–25 (8th Cir.1996); *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 212 (7th Cir.1995); *Keisling v. SER–Jobs for Progress, Inc.*, 19 F.3d 755, 758–59 (1st Cir.1994); *Scala v. Moore McCor-*

---

1. The *Harbor Insurance* opinion uses the phrases "directed verdict" and "judgment not on the verdict." Under the 1991 revisions to the Federal Rules of Civil Procedure, these terms have been replaced by the generic phrase "judgment as a matter of law." *See* FED.R.CIV.P. 50 advisory committee's note; 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 50.03 (3d ed.2000).

*mack Lines, Inc.,* 985 F.2d 680, 684 (2d Cir.1993); *McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 671 (5th Cir.1993); *Keith v. Truck Stops Corp. of Am.,* 909 F.2d 743, 744 (3d Cir.1990); *National Indus., Inc. v. Sharon Steel Corp.,* 781 F.2d 1545, 1548 (11th Cir.1986).

· ■ Our court has never squarely adopted this general rule, although we have held that "a prerequisite to any motion for judgment n.o.v. is a motion for directed verdict at the close of all the evidence," and that a defendant cannot raise insufficiency of the evidence on appeal unless the defendant filed a directed verdict motion seeking judgment on that basis. *U.S. Indus., Inc. v. Blake Constr. Co.,* 671 F.2d 539, 548 (D.C.Cir.1982). If we applied that holding to the District, it would lose because it failed to move for judgment as a matter of law at the close of the evidence. But in light of the district court's failure to rule on the District's motion at the close of the plaintiffs' case, the District urges us to treat that motion as the equivalent of one filed at the close of all the evidence. Rule 50(b) of the civil rules states that "[i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence . . . [t]he movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment." FED. R.CIV.P. 50(b). This is of no assistance to the District. The text of Rule 50(b) envisions a motion made after "entry of judgment," something the District neglected to do.

There is another problem for the District. With some exceptions courts of appeals hold that even if a defendant files a motion for judgment at the close of the plaintiff's case, the defendant must move for judgment as a matter of law at the close of all evidence in order to preserve

lack of sufficient evidence as a ground for appeal—again something the District neglected. *See, e.g., Patel,* 103 F.3d at 878 & n. 9; *Umpleby,* 69 F.3d at 212. Although exceptions have grown up over the years, *see, e.g., Douglas County Bank v. United Financial Inc.,* 207 F.3d 473, 477 (8th Cir.2000); *Scala,* 985 F.2d at 684 n. 2, the basic rule remains intact and has become common to both civil and criminal practice. The Supreme Court treated it as a foregone conclusion as much as a century ago. *See Bogk v. Gassert,* 149 U.S. 17, 23, 13 S.Ct. 738, 37 L.Ed. 631 (1893); *Columbia & Puget Sound R.R. v. Hawthorne,* 144 U.S. 202, 206, 12 S.Ct. 591, 36 L.Ed. 405 (1892). The logic behind the rule is simple. "It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link; and, if not, he may move to take the case from the jury upon the conclusion of the entire testimony." *Bogk,* 149 U.S. at 23, 13 S.Ct. 738; *see also United States v. Zeigler,* 994 F.2d 845, 848 (D.C.Cir.1993) (suggesting that "'negative inferences'" from defendant's manner of testifying could "suppl[y] enough evidence to convince any rational juror of . . . guilt beyond a reasonable doubt").

Our practice in criminal cases is comparable. Rule 29 of the Federal Rules of Criminal Procedure was intended to "accord with the practice prescribed for civil cases by Rule 50(a) of the Federal Rules of Civil Procedure," Fed.R.Crim.P. 29 advisory committee's note. A defendant may move for a judgment of acquittal (previously called a motion for a directed verdict) on the ground that "the evidence is insufficient to sustain a conviction," *id.*; the motion may be made at the close of the prosecution's case-in-chief or at the close of all the evidence. *Id.* But in this circuit, as in others, "a criminal defendant who, after denial of a motion for judgment of

acquittal at the close of the government's case-in-chief, proceeds to the presentation of his own case, waives his objection to the denial." *United States v. Foster*, 783 F.2d 1082, 1085 (D.C.Cir.1986) (en banc). A defendant also waives his right to object to the sufficiency of the evidence on appeal if he fails, at the end of all evidence, to renew the motion he lodged at the close of the government's case. *See United States v. Sherod*, 960 F.2d 1075, 1077 (D.C.Cir. 1992). (In criminal cases, Rule 29(b) provides that if "the court reserves decision"—as the district court did here—"it must decide the motion on the basis of the evidence at the time the ruling was reserved," but civil Rule 50 has no comparable provision.)

For the District to escape the force of these precedents it must come up with some exception to the requirement that a Rule 50 motion be renewed at the close of all evidence in order to preserve a sufficiency-of-the-evidence claim for appeal. A Fifth Circuit decision, the District tells us, recognizes such an exception when the motion at the end of the plaintiff's case sufficiently warned the plaintiff of the issues and the district court "either refused to rule or took the motion under advisement." *Polanco v. City of Austin*, 78 F.3d 968, 974–75 (5th Cir.1996). Even if we followed *Polanco*, the District would not qualify for the exception. Its oral motion did not fairly warn the plaintiffs of the issues it now seeks to raise on appeal and the District's own witnesses provided evidence that could support the plaintiffs' case. For example, Lieutenant Knieser testified that jobs were sometimes filled without posting vacancy notices, a fact relevant to the District's objection that plaintiffs could not have been denied jobs for which they never had applied.

■ Given the District's procedural default, we are limited in our review to considering whether the verdict is so unsupported by evidence that allowing it to stand would constitute a manifest miscarriage of justice. *Cf. Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 187 (4th Cir.1994). Whatever flaws there may be in the record compiled by the plaintiffs, they are not that severe.

*Affirmed.*