**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD E. DILLEY,

      Plaintiff-Appellee and Cross-Appellant,

v.

SUPERVALU, INC.,

      Defendant-Appellant and Cross-Appellee.

Nos. 00-1200, 00-1201, and 00-1217

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 95-WM-1882)**

---

Steven J. Merker (Jessica L. Harshbarger and Fatina N. Purdie with him on the briefs), Dorsey & Whitney, LLP, Denver, Colorado, for Defendant-Appellant and Cross-Appellee.

Jeffrey Menter, Littleton, Colorado, for Plaintiff-Appellee and Cross-Appellant.

---

Before **TACHA**, Chief Judge, **EBEL** and **GARTH**,[*] Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    [*] Honorable Leonard I. Garth, Senior Circuit Judge, Third Circuit Court of Appeals, sitting by designation.

This is a case brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., in which each party has raised several challenges to the proceedings below. Plaintiff-Appellee and Cross-Appellant Donald Dilley brought suit against Defendant-Appellant and Cross-Appellee SuperValu, Inc., alleging that SuperValu wrongfully terminated him from his job as a truck driver because of a lifting restriction imposed by doctors after Dilley injured his back. The district court rejected SuperValu's request for judgment as a matter of law and allowed the case to go to the jury, which found that SuperValu had unlawfully discriminated against Dilley. SuperValu argues that Dilley's ADA claim fails as a matter of law because he is not a qualified individual under the statute, his requested accommodation was unreasonable, and he refused SuperValu's offered accommodation. SuperValu also challenges the adequacy of the district court's jury instructions. In his cross-appeal, Dilley challenges the district court's reduction of the jury's back pay award, and argues that the district court's dismissal of Dilley's punitive damages claim and denial of his motion for reinstatement were erroneous. We AFFIRM the district court's order in all regards, except for its denial of Dilley's motion for reinstatement. Because the district court based its denial order on an incorrect characterization of the law, we VACATE and REMAND on that issue alone.

## BACKGROUND

Dilley worked as a truck driver for SuperValu for approximately eighteen years. During the course of his employment, he developed back problems and eventually became subject to a sixty-pound lifting restriction imposed by his physician. SuperValu contends that, in light of this restriction, Dilley was unable to perform the essential functions of his truck-driving position, but that he is not disabled under the ADA because he is not substantially limited in any major life activity. Dilley argues that he could have been reasonably accommodated by being assigned to routes where heavy lifting was not required. SuperValu also contends that it offered Dilley two alternative positions within his lifting restriction, but he refused both. Dilley responds that he was merely invited to apply for one of the positions, and the other position was not even vacant. According to Dilley, neither position was remotely comparable to his job as a truck driver.

The jury found that Dilley was disabled under the ADA, that SuperValu intentionally discriminated against him by terminating him, and that SuperValu failed to accommodate him. The jury did not specify whether Dilley was actually disabled or was simply "regarded as" disabled by SuperValu. The jury awarded Dilley $115,268 in back pay and $25,001.43 in other compensatory damages. The district court considered the jury's award of back pay damages to be an advisory

verdict, and substituted its own award of $43,968 for back pay because of a failure to mitigate. After various post-judgment motions, this appeal followed.

## DISCUSSION

I.    *Sufficiency of the Evidence*

Dilley contends that SuperValu cannot contest the sufficiency of the evidence on appeal because, while SuperValu moved for judgment as a matter of law ("JMOL") at the close of Dilley's case, SuperValu failed to renew its motion at the close of all the evidence. Failure to renew the motion precludes SuperValu from challenging the sufficiency of the evidence on appeal. Davoll v. Webb, 194 F.3d 1116, 1136 (10th Cir. 1999). Under such circumstances, we will review only for "plain error constituting a miscarriage of justice." First Sec. Bank v. Taylor, 964 F.2d 1053, 1057 (10th Cir. 1992) (applying plain error review where party raised issue in motion for judgment notwithstanding the verdict, but not in earlier motion for directed verdict); see also Fredrick v. District of Columbia, 254 F.3d 156, 160-62 (D.C. Cir. 2001) (reviewing sufficiency of evidence under "manifest miscarriage of justice" standard where party failed to renew JMOL motion); Williams v. City of Kansas City, 223 F.3d 749, 753 (8th Cir. 2000) (reviewing sufficiency of evidence for plain error where party failed to renew JMOL motion); Patel v. Penman, 103 F.3d 868, 878 (9th Cir. 1996) (reviewing sufficiency of

- 4 -

evidence for plain error where party failed to raise issue in directed verdict motion); Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996) (same); Hammond v. T.J. Litle & Co., 82 F.3d 1166, 1171-72 (1st Cir. 1996) (same); MacArthur v. Univ. of Tex. Health Ctr., 45 F.3d 890, 897 n.8 (5th Cir. 1995) (reviewing sufficiency of evidence for plain error where party failed to renew JMOL motion).

SuperValu acknowledges this general rule, but cites Aguinaga v. United Food & Commercial Workers Int'l Union, 993 F.2d 1463, 1470 (10th Cir. 1993), for the notion that "technical precision" with the rule is not required "as long as the trial court [was] aware of the movant's position." SuperValu contends that it put the district court on notice of its position during the charging conference, when SuperValu objected to the inclusion of "lifting" in the instructions on major life activities. SuperValu cites to the charging conference transcript, but failed to include the transcript in the record, so we are unable to verify its characterization.

Even assuming that SuperValu objected to the "lifting" instruction, whether the jury received such an instruction is of limited relevance to the resolution of SuperValu's sufficiency of the evidence arguments. The record reveals that this case turns on "working" as a major life activity, not "lifting." SuperValu does not claim to have made any objection to the inclusion of "working" in the jury instructions, or to have otherwise challenged the sufficiency of the evidence

related to "working" after its initial JMOL motion. Even if SuperValu put the district court on notice that it viewed the evidence as insufficient to support an instruction on lifting, that did not put the district court on notice of the broader challenges now raised by SuperValu pertaining to "working." Because SuperValu failed to renew its JMOL motion, we review only for plain error.

In reviewing a JMOL ruling, we construe the record in the light most favorable to Dilley, the nonmoving party, keeping in mind that judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Davis v. United States Postal Serv., 142 F.3d 1334, 1339 (10th Cir. 1998) (internal quotation marks omitted). This stringent standard of review is further heightened under plain error review, which "has been limited to errors which seriously affect the fairness, integrity or public reputation of judicial proceedings." Glenn v. Cessna Aircraft Co., 32 F.3d 1462, 1464 (10th Cir. 1994) (internal quotation marks omitted). After reviewing the record and the briefs in this case, we conclude that the district court did not commit plain error by allowing Dilley's ADA claim to go to the jury.[2]

---

[2] Additionally, SuperValu's failure to submit the entire trial transcript provides a separate basis for rejecting its sufficiency of the evidence argument. See Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir. 1998) (rejecting sufficiency of the evidence claim where only portion of trial transcript

(continued...)

- 6 -

II.     *Whether Dilley's requested accommodation was reasonable.*

SuperValu argues that Dilley's requested accommodation – returning to a truck driver position – "was unreasonable as a matter of law because it would have required SuperValu to violate the terms of its collective bargaining agreement with the union representing its warehouse employees." Because the driving positions are subject to a seniority system, SuperValu contends that Dilley could have been "bumped" from any of the driving positions for which he might have been qualified, and that keeping him in the position would have violated the collective bargaining agreement. Dilley insists that his seniority made such displacement unlikely.

The ADA requires an employer to make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). SuperValu is correct that this provision does not require an employer to provide an accommodation that would violate a bona fide seniority system under the terms of a collective bargaining agreement. But it is the <u>direct</u> violation of a seniority system that has been held unreasonable under the governing case law. <u>See, e.g.</u>, <u>US Airways, Inc. v. Barnett</u>, 122 S. Ct. 1516, 1519 (2002) ("[T]o show that a requested accommodation conflicts with the rules

---

²(...continued)
was provided).

of a seniority system is ordinarily to show that the accommodation is not 'reasonable.'"); Aldrich v. Boeing Co., 146 F.3d 1265, 1272 n.5 (10th Cir. 1998) ("[H]ad Boeing transferred Aldrich to any of the last three disputed jobs . . . it would have violated the seniority provisions of the collective bargaining agreement."); Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995) ("[P]laintiffs' collective bargaining agreement prohibits their transfer to any other job because plaintiffs lack the requisite seniority.").

Here, by contrast, there was only a potential violation of the seniority system. SuperValu does not contend that Dilley lacked the seniority required to be placed in a non-lifting driver position. Rather, SuperValu contends that the seniority system would be violated if a more senior employee later requested to be placed in Dilley's new position, and SuperValu nevertheless decided to leave Dilley in that position. SuperValu's own witness testified that Dilley ranked fifth out of forty-two drivers in seniority. Thus, the jury could have concluded that the prospect of Dilley's displacement by a more senior driver was remote. Even if a more senior driver did request Dilley's new position, there is no reason why SuperValu would have to violate the seniority system by refusing to remove Dilley from the bumped job until other routes or positions would become available.

"Once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate." White v. York Int'l Corp., 45 F.3d 357, 361 (10th Cir. 1995) (citation omitted). Dilley produced evidence from which the jury could have concluded that he could have been accommodated through assignment to certain positions that were, as a matter of fact, within his lifting restriction. The only justification offered by SuperValu for its inability to grant this requested accommodation is its concern regarding potential violations of the seniority system. This concern is speculative, and did not preclude the jury from finding Dilley's requested accommodation to be reasonable. The district court properly instructed the jury that "reasonable accommodation may include . . . allowing plaintiff to bid into a position for which he is qualified and has the requisite seniority." Apparently, the jury concluded that Dilley was qualified and had the requisite seniority for certain truck driving positions within his sixty-pound lifting restriction. That conclusion was supported by the evidence introduced at trial, and thus the district court did not commit plain error by allowing the ADA claim to go to the jury.

III.    *Whether SuperValu's offered accommodation was reasonable.*

SuperValu argues that this case should have been dismissed because "SuperValu attempted to reasonably accommodate Dilley by placing him in a nonunion dispatch or merchandising position." What SuperValu fails to mention, however, is that the dispatch position entailed a substantial cut in pay, and the merchandising job was a position "that might open up in the future." There is no evidence regarding the pay, duties, or any other aspects of the merchandising position. Neither position actually was offered to Dilley.

In reasonably accommodating an employee under the ADA, "[t]he employer should first consider lateral moves to positions that are regarded as equivalent," and "may only consider lesser jobs that constitute a demotion if there are no such equivalent positions available." Smith v. Midland Brake, Inc., 180 F.3d 1154, 1177 (10th Cir. 1999) (en banc); see also 29 C.F.R. app. § 1630.2(o) ("An employer may reassign an individual to a lower grade and paid position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation."). As discussed above, the jury could have concluded that SuperValu improperly disqualified Dilley from certain truck-driving positions within his lifting restriction. Those positions were equivalent to his former position, and should have been considered before a

demotion.  Under these circumstances, SuperValu cannot show that its offered accommodation was reasonable as a matter of law.

IV.    *Jury instructions.*

Although it failed to object to the jury instructions below, SuperValu now challenges the instructions given in this case on the ground that the district court's failure to provide a "precise identification of the major life activity involved" constitutes plain error.  In closing argument, Dilley's counsel identified working and lifting as major life activities, but did not unequivocally state that those were the only activities at issue.  In its instruction to the jury, the district court identified several examples of "major life activities," including "caring for oneself, performing manual tasks, lifting, seeing, hearing, speaking, breathing, learning or working."  According to SuperValu, "these references create a high degree of speculation as to whether the jury thought they were deciding that Dilley was substantially limited when it came to work, lifting, both, or neither."

It is true that steps must be taken to ensure that the jury only considers the major life activities at issue.  A plaintiff "must specifically plead or prove at trial the impairments and the major life activities he or she asserts are at issue." Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999).  And the trial court, "in making determinations of law and formulating

- 11 -

jury instructions, is to analyze only the major life activity asserted by the plaintiff." Id. at 1231.

Here, Dilley's evidence at trial focused on SuperValu's disqualification of Dilley from working in various positions as a result of his lifting restriction. Further, SuperValu's counsel emphasized the claimed working disability in his closing argument by stating that the company did not regard Dilley as being unable to work. And although the district court did not expressly instruct the jury to consider only the activity of working, the court gave extensive instructions on the factors to be considered in determining whether an individual is substantially limited in working, and did not give specific instructions for any other major life activity. By contrast, the Poindexter court found the instructions in that case inadequate because the jury was given "no guidance as to which endeavors it could properly consider as major life activities in reaching its decision." 168 F.3d at 1231. In this case, the jury's attention was focused properly on how Dilley's lifting restriction substantially limited him in the major life activity of working. The district court's instructions did not amount to plain error.

V.     *Post-trial reduction of damages.*

The jury awarded Dilley $115,268 in damages for "backpay plus benefits," no money for "future earnings and benefits," and $25,001.43 for "other

- 12 -

compensatory damages." In a rather confusing argument, Dilley contends that the district court should not have relied on Dilley's failure to mitigate as justification for reducing the jury's back pay award. Dilley does not challenge the substance of the district court's mitigation ruling, or the court's treatment of back pay as an equitable issue subject to judicial determination. Rather, Dilley asserts, without legal support, that we "must assume that the jury verdict already includes consideration of the mitigation issues raised by the trial court in reducing the back pay," and that he was thus penalized twice for failing to mitigate.

Dilley disregards the district court's reasoning on this issue. The court did not reduce the jury's back pay award, but rather treated the award as an advisory verdict pursuant to Federal Rule of Civil Procedure 39(c). This was based on the court's ruling that back pay was an equitable issue to be determined by the court, not the jury. The court acknowledged that it was unclear whether the jury's award of $25,000 for compensatory damages included a reduction for failure to mitigate. The court left this award intact, however, and addressed only the proper amount of back pay, ruling that "whether or not any possible backpay award should be reduced by the plaintiff's failure to mitigate is intrinsically tied to the court's equitable determination of backpay – an issue distinct from the jury's determination of compensatory damages." Once the court decided to treat the jury's verdict as advisory, it was obligated to make its own findings. Marvel v.

United States, 719 F.2d 1507, 1515 n.12 (10th Cir. 1983). The court ultimately concluded that Dilley was entitled to back pay only for a portion of the time following his termination, for at a certain point he should have been able to secure alternative employment.

It is unclear what the $25,000 in compensatory damages represents, but Dilley's counsel gave some clues in closing argument, telling the jury it could "award damages for back pay, future pay, compensatory damages for emotional pain and suffering." He later describes the damages options as "back pay and perhaps future pay and perhaps emotional distress," and also raises the possibility of awarding "noneconomic damages, including emotional pain and suffering, inconvenience, mental anguish." Whether or not the jury followed the request of Dilley's counsel, there is no reason to believe that the $25,000 award was impacted by the mitigation inquiry. Thus, there is no evidence that Dilley was penalized twice for failing to mitigate.

Mitigation is logically encompassed by the back pay determination. Any back pay award must be reduced by alternative sources of income that would reasonably have been available to Dilley. In closing arguments, SuperValu's counsel urged the jury to consider Dilley's failure to mitigate when determining his entitlement to back pay. However, there is nothing to suggest that mitigation was urged or instructed on the issue of compensatory damages, and even if it had

been so urged or instructed, we fail to see how that would cast doubt on the correctness of the district court's consideration of Dilley's failure to mitigate in awarding back pay. Dilley's unsupported assertion that the district court's back pay award amounts to a windfall for SuperValu is unconvincing.

VI.    *Punitive damages.*

Dilley asserts that he was entitled to a jury determination of his punitive damages claim. In dismissing the claim pursuant to SuperValu's Rule 50 motion, the court ruled:

> Other than the fact that the defendant insisted upon acting in accordance with its expert's conclusion concerning the disability of the plaintiff . . . I see nothing in the record that suggests that the defendant was acting with malice or reckless indifference toward the rights of the plaintiff as a disabled individual. If anything, they seemed to be trying to follow the law. And there is no evidence from which a reasonable juror could infer that the defendant acted with reckless disregard or malice of the plaintiff's rights under the Americans With Disabilities Act.

"Whether sufficient evidence exists to support punitive damages is a question of law reviewed de novo." EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1244 (10th Cir. 1999) (quoting Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1262 (10th Cir. 1995)). "[A] court may award punitive damages to an ADA plaintiff upon proof that the defendant engaged in 'a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual.'" Id.

(quoting 42 U.S.C. § 1981a(b)(1)). To satisfy this standard, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." Id. at 1245 (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

Dilley recites several facts in an attempt to show that "SuperValu was aware of the requirement to accommodate Dilley, but ignored it." None are convincing. As discussed above, SuperValu declined to assign Dilley to non-lifting driving routes on the ground that he would subsequently be bumped based on the seniority system set forth in the collective bargaining agreement. SuperValu's concern may have been misplaced, but it cannot be viewed as in deliberate disregard for Dilley's ADA rights. The other facts relied on by Dilley – e.g., SuperValu's inability to find a new truck seat acceptable to Dilley, having Dilley removed from the premises after an altercation with a member of SuperValu's management – also fail to establish such a disregard. The district court's dismissal of Dilley's punitive damages claim was entirely proper.

VII. *Reinstatement.*

Dilley objects to the district court's ruling that Dilley's failure to mitigate precluded his reinstatement. The district court denied reinstatement based on the following reasoning:

Frontpay and reinstatement are alternative remedies to make the victim of discrimination whole. Spulak v. K-Mar[t] Corp., 894 F.2d at 1157. Entitlement to either remedy depends upon whether the plaintiff has mitigated his damages and whether he is made whole by other relief. See [Albemarle Paper Co. v. Moody, 422 U.S. 405, 419-21 (1975)]; Starrett v. Wadley, 876 F.2d 808, 824 (10th Cir. 1989). If either of these issues is decided adversely to the plaintiff, then relief is not proper. Spulak, 894 F.2d at 1158. Such is the case here as I have determined that plaintiff has not reasonably mitigated damages since July, 1995. To the extent plaintiff's claim for frontpay remains an issue before me, the failure to mitigate also precludes that claim in addition to any entitlement to reinstatement.

It is true that a district court has "broad discretion in fashioning relief to achieve the broad purpose of eliminating the eff[ects] of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination." Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir. 1980). Under these circumstances, however, the district court abused its discretion in denying reinstatement – at least for the reasons proffered.

The failure to mitigate relied on by the district court was Dilley's failure to pursue available truck driving jobs with other employers. Such failure does not bear on Dilley's entitlement to reinstatement. Mitigation is relevant to determining a plaintiff's entitlement to back pay, see supra part V, and front pay, see, e.g., Gotthardt v. Nat'l R.R. Passenger Corp., 191 F.3d 1148, 1157 (9th Cir. 1999); Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1562 (11th Cir. 1988), but there is no logical link between a plaintiff's pursuit of alternative employment and whether he should be reinstated to the position from which he was wrongfully

discharged.[3] A plaintiff's ability to replace some of the income lost by virtue of the wrongful discharge certainly affects how much lost income he is due, but it does not bear on whether the plaintiff is entitled to the job itself. This is reflected in the reality that courts routinely find that a plaintiff's failure to mitigate negates or reduces his claim for back pay or front pay, but nevertheless analyze his claim for reinstatement without even referencing the mitigation finding. See Hazel v. United States Postmaster Gen., 7 F.3d 1, 5 (1st Cir. 1993); Reneau v. Wayne Griffin & Sons, Inc., 945 F.2d 869, 870 (5th Cir. 1991); Hansard v. Pepsi-Cola Metro. Bottling Co., 865 F.2d 1461, 1470 (5th Cir. 1989) ("[I]f the district court finds on remand that [the plaintiff] cannot be reinstated, the court must consider his failure to mitigate his damages in determining the extent to which, if at all, front pay is appropriate."). The district court's reasoning also runs counter to those cases where courts have reduced damages based on a failure to mitigate even where reinstatement has been ordered. See, e.g., Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1271, 1280 (4th Cir. 1985); Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 117, 120 (1st Cir. 1977).

---

[3] This is not to say that all types of mitigation are irrelevant to the reinstatement inquiry. See, e.g., Nelson v. Univ. of Me. Sys., 944 F. Supp. 44, 50-51 (D. Me. 1996) (denying professor's request for reinstatement and tenure where he declined invitation to reapply for tenure, thereby not allowing "the University the opportunity to rectify its error").

The three cases cited by the district court do not, under any reasonable interpretation, support its conclusion. The cited cases say nothing that would even suggest a connection between mitigation and reinstatement. Spulak comes the closest, holding that the defendant was not entitled to a reduction in damages where the plaintiff presented evidence of mitigation, although it appears likely, in context, that the court was discussing back pay. 894 F.2d at 1158. The Spulak court denied reinstatement based not on the failure to mitigate, but on the plaintiff's request not to order reinstatement given his fear of being retaliated against by his former coworkers. See id. at 1157.

It may be that there are other grounds for denying Dilley reinstatement in this case. But the reasoning set forth in the district court's order does not warrant such a denial, especially given that "reinstatement is the preferred remedy under the ADA." Davoll, 194 F.3d at 1144 n.19. The district court's ruling is vacated and remanded on this point alone.

## CONCLUSION

For the foregoing reasons, we VACATE and REMAND the district court's denial of Dilley's motion for reinstatement, and AFFIRM the judgment in all other respects. Dilley's request for his appellate attorney's fees is GRANTED.