T.C. Summary Opinion 2009-75


UNITED STATES TAX COURT


LILLIAN DOREEN VILLELA-WILCOX, Petitioner, AND
DAVID J. WILCOX, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11479-07S.                    Filed May 13, 2009.


        Lillian Doreen Villela-Wilcox, pro se.

        David J. Wilcox, pro se.

        Daniel W. Layton, for respondent.


        CARLUZZO, Special Trial Judge:  This case was heard

pursuant to the provisions of section 7463.[1]  Pursuant to section

--------

        [1]Unless otherwise noted, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.  Rule references are to the Tax Court Rules of
Practice and Procedure.

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be cited as precedent for any other case.

In a final notice of determination dated April 12, 2007, respondent denied petitioner's claim for section 6015 relief with respect to her joint and several liability arising from the 2000 joint Federal income tax return she filed with intervenor (the return).  According to that notice, relief was denied because petitioner "knew, or had reason to know, of the income or deductions that caused the additional tax".  In a timely petition filed May 22, 2007, petitioner challenges respondent's determination.  Respondent now concedes petitioner's entitlement to relief under section 6015(c).  Intervenor is opposed to allowing petitioner any relief under section 6015.  Petitioner's entitlement to section 6015 relief depends, in large part, upon what she "knew" or had "reason to know" at the time she signed the return, and we focus our attention on those points.

Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in California, and intervenor resided in Colorado.

Petitioner and intervenor were married February 14, 1997. Several months later, in September, intervenor, in his own name and with financing through a mortgage, purchased a house (the

marital residence).  Apparently petitioner's credit rating at the time precluded her participation in the acquisition of the marital residence.  Nevertheless, by quitclaim deed executed by intervenor after he acquired his interest in the marital residence, she was made a joint tenant.

Petitioner and intervenor separated in 2002 and were divorced in 2006.  During the course of their marriage they filed joint Federal income tax returns for the years 1997 through 2001.

The 1997 Joint Federal Income Tax Return

Events that occurred during 1997 are relevant to the relief petitioner seeks.  During 1997 petitioner and intervenor attended what was promoted as a "financial planning seminar" in Montego Bay, Jamaica, conducted by Anderson Ark & Associates (Anderson Ark).  In fact the purpose and scope of the seminar was to market interests in partnerships designed to reduce a partner's income tax liability through illegitimate means.  Intervenor bought into a newly formed general partnership called GALEED Management, which was organized and domiciled in Grand Turk, Turks and Caicos Islands (GALEED).  Although not technically a partner in GALEED, petitioner was designated its "agent".

Petitioner and intervenor's 1997 joint Federal income tax return (the 1997 return) was prepared by an affiliate of Anderson Ark and mailed to them.  Both of them reviewed and signed it. The 1997 return includes a Schedule E, Supplemental Income and

Loss, showing a substantial loss attributable to GALEED.  The loss eliminated what would otherwise have been their Federal income tax liability for that year (excluding the Schedule E loss, the 1997 return shows over $200,000 in income) and resulted in a $42,536 income tax refund, a portion of which was used to make a cash purchase of a new Cadillac.

The 2000 Federal Income Tax Return

During 2000 intervenor purchased an interest in Forth Venture, L.L.C. (Venture), another entity promoted by Anderson Ark.  Intervenor's decision to acquire that interest was prompted by a comparison of two "mock" 2000 joint Federal income tax returns, each prepared by an affiliate of Anderson Ark.  One return projected a $29,421 joint income tax liability of petitioner and intervenor if the purchase was not made, and the other projected an income tax refund of $28,800, if the partnership interest was acquired.  The cost of the partnership interest was $21,000.

In order to finance intervenor's purchase of an interest in Venture, the marital residence had to be refinanced.  The refinancing was made more complicated because petitioner, although shown to be a joint tenant on the quitclaim deed executed years before, was not liable on the note secured by the original mortgage.  Consequently, in a prearranged series of events, petitioner reconveyed her interest in the marital

residence to intervenor, intervenor refinanced the marital residence in his own name, and, once again by quitclaim deed, petitioner's joint tenancy in the martial residence was restored. Petitioner recalls the series of events described above in connection with the refinancing of the marital residence but conveniently claims to have no recollection of the reasons for doing so.

As it turned out and as with 1997, the return was prepared by an affiliate of Anderson Ark and includes a Schedule E. That schedule shows a $356,250 loss attributable to Venture. As a result the return shows no taxable income (excluding the Schedule E loss, the return shows over $160,000 in income), no income tax liability, a $28,800 overpayment of income tax, and a refund claim for that amount. By the time the return was filed, however, respondent apparently was on to Anderson Ark promotions, and there is some question in the record whether petitioner and intervenor ever received the refund.

Respondent's Examination of Venture for 2000

As a result of an examination conducted in accordance with the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, administrative adjustments were made to Venture's 2000 return. Following Venture's examination petitioner and intervenor, each received a Notice of Final Partnership Administrative Adjustment (FPAA), one issued on May

16, 2005, and the other on June 20, 2005. Neither petitioner nor intervenor filed a petition in this Court with respect to the FPAAs. The administrative adjustments made to Venture caused a computational adjustment (increase) to petitioner and intervenor's 2000 joint Federal income tax liability of more than $75,000 for 2000, and in due course, that increase was assessed.

The Notice of Deficiency for 2000

On May 22, 2006, after the dust from the TEFRA procedures settled, petitioner and intervenor were issued what is commonly referred to as an affected items notice of deficiency for 2000. In that notice respondent imposed a $6,190 section 6662(a) accuracy-related penalty computed with reference to the additional tax liability assessed as a result of the disallowance of the Venture loss deduction claimed on the return. Neither petitioner nor intervenor filed a petition with this Court challenging the imposition of that penalty, and that penalty, along with related amounts, was assessed in due course.

Petitioner's Request for Section 6015 Relief

In a Form 8857, Request for Innocent Spouse Relief, received by respondent on October 1, 2006, petitioner requested relief from the portion of her 2000 joint Federal income tax liability that remained unpaid as of that date. In a final notice of determination, dated April 12, 2007, respondent determined that she was not entitled to the relief requested.

As noted, respondent now concedes that petitioner is entitled to relief under section 6015(c). Respondent and petitioner have proceeded as though respondent's concession renders moot petitioner's request for relief under section 6015(b) and (f), and we do likewise, focusing our attention solely on petitioner's entitlement to relief under section 6015(c).

## Discussion

In general, spouses who elect to file a joint Federal income tax return for the taxable year are jointly and severally liable for the entire amount of tax reported on the return, as well as for the liability for any deficiency subsequently determined, even if all of the income giving rise to the tax liability is allocable to only one of them. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). "Section 6015, however, provides various means by which a spouse can be relieved of this joint and several obligation." Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

One means is provided in section 6015(c). Upon election of its application by the taxpayer, that section limits a spouse's liability for a deficiency to the portion of the deficiency properly allocable to that spouse under section 6015(d). In general, an item that gives rise to a deficiency on a joint Federal income tax return will be allocated to the individuals

who file the joint return in the same manner as that item would have been allocated had those individuals filed separate returns. Sec. 6015(d)(3)(A).  As noted, respondent now concedes petitioner's entitlement to relief under section 6015(c); this concession presumably contemplates a section 6015(d) allocation satisfactory to both of them.  Separate and apart from any such allocation, intervenor challenges petitioner's entitlement to section 6015(c) relief.

According to intervenor, petitioner knew about the item giving rise to the 2000 deficiency, that is, the deduction for the loss from Venture, and that knowledge disqualifies her from section 6015(c) relief.  The evidence overwhelmingly would support a finding that petitioner had "reason to know" about the understatement of tax shown on the return.  See, e.g., Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989); King v. Commissioner, 116 T.C. 198, 204 (2001); Wiener v. Commissioner, T.C. Memo. 2008-230; Levin v. Commissioner, T.C. Memo. 1987-67.  But a requesting spouse's "reason to know" of the item is not sufficient to deny relief under section 6015(c).  If, as here, all of the other requirements of that section have been satisfied, then, as relevant here, relief is denied to the requesting spouse only if the Commissioner "demonstrates that * * * [the requesting spouse] had actual knowledge, at the time such individual signed the return, of any item giving rise to a

deficiency". Sec. 6015(c)(3)(C); <u>Charlton v. Commissioner</u>, 114 T.C. 333, 341 (2000); <u>Martin v. Commissioner</u>, T.C. Memo. 2000-346. Normally, the "burden of proof" on the point rests with the Commissioner. Here, it would seem that respondent's burden has been rendered moot by respondent's concession.[2] The question to be addressed, then, is what becomes of the evidence of petitioner's "actual" knowledge offered by intervenor.

Although the situation seldom occurs in this Court, we recognize that the burden of proof placed on one party can be satisfied by evidence offered by that party's adversary. See e.g., <u>Bogk v. Gassert</u>, 149 U.S. 17, 23 (1893) ("It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link."); <u>United States v. Brown</u>, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case."); <u>United States v. Ortiz-Rengifo</u>, 832 F.2d 722, 726 (2d Cir. 1987) ("[W]e may look to the defendant's own evidence to determine so fundamental a matter as whether there was proof of all the elements of the crime charged."). Under appropriate circumstances, we would not be reluctant to deny section 6015(c) relief to a requesting spouse if evidence offered

---

[2]The existence of the settlement agreement between petitioner and respondent has appropriately been called to the Court's attention. The specific terms and conditions of the agreement between them, appropriately, has not. See Fed. R. Evid. 408.

by an intervenor, rather than the Commissioner, demonstrated that such relief was unavailable because of the requesting spouse's "actual knowledge" of "the item giving rise to the deficiency".

Other than matters stipulated, which do not in and of themselves satisfy the burden contemplated by section 6015(c)(3)(C), respondent offered no evidence at trial. Petitioner and intervenor each testified on his or her own behalf, and numerous documents were introduced into evidence on intervenor's behalf. On balance, we find intervenor to be the more credible witness. Intervenor's evidence shows petitioner's connection and involvement with intervenor's participation in Anderson Ark promotions over the years, including the year in issue. As it relates to petitioner's "actual" knowledge, intervenor's evidence is persuasive, but it is not so compelling to require that the settlement between respondent and petitioner be disregarded.

After careful review of all of the evidence we find that petitioner is entitled to relief under section 6015, but only pursuant to section 6015(c), and only as agreed between her and respondent.

To give effect to that agreement, and to otherwise reflect the foregoing,

Decision will be entered

under Rule 155.